Good morning, your honors. My name is Renee Pietropalo and I represent the appellant Conrad Clinton Blair. Would you raise the microphone a little bit so we can hear you better? With the court's permission, I'd like to ask for three minutes for rebuttal. Granted. The district court hearing correctly determined that Mr. Blair had five previous convictions for violent felonies committed on occasions different from one another and this finding increased his otherwise applicable maximum sentence and subjected him to a 15-year mandatory minimum sentence. None of the five convictions relied upon by the district court and none of the three additional convictions that are offered by the government in its responsive brief constitute violent felonies. Can you, well, go ahead. I may be interrupting you as you're just about to get to the point. What's your basis for thinking that these aren't things that took place on separate occasions as the court found? Okay, for me the most helpful way of looking at this is divided into two categories. De Camp's is the rule and the rationale of De Camp's applies to the three 1990 robbery convictions and to the terroristic threats conviction and it knocks those out. How does De Camp do that? De Camp seems to say, not surprisingly, that if you have a statute that is not divisible, then you have no foundation or basis for applying the modified categorical approach. Isn't that the holding of De Camp? Yes. Okay, well, you think the Pennsylvania robbery statute is not divisible? No. I'd like to start with the 1990 robbery convictions. We have a robbery statute that is clearly divisible into A1I, 2I, 3I, through 5. And so we know we can look at the Taylor Shepard documents. Mr. Blair, we have an indictment and a judgment that reflects only that he pled guilty to robbery as a felony one. At the time, felony one robbery was A1 through A3. Then we turn to the least culpable conduct rule. This court, it's settled, the law is settled, that a guilty plea to a statute that has multiple, that's divisible, the defendant, you must conclude that the conviction was based on the least culpable conduct necessary to support the conviction. So here we have A3. That's the least culpable conduct. This is where De Camp's, this is exactly where De Camp's comes into play. De Camp's talks about a broad statute that's not divisible. This A3 is a broad statute that's not divisible. It is just like the example. So you're taking the divisible statute down to a non-divisible subsection and then saying De Camp applies? That's exactly what De Camp's does. It has a statute that is, it's entry of various places to commit a crime. In Taylor, Shepard, and even in De Camp's, they talk about the various places. That's divisible. But the entry, they're talking about the statute's not divisible into entry. The element of entry is this broad element. And what's most helpful, at least to my way of thinking, is the example, the hypothetical that the court gives us in De Camp's. It hypothesized a statute, just like this one, that criminalizes assault with a weapon. And it says only assault with a backup offense. As long as the statute requires any indeterminate weapon, that's all the jury has to find to convict and that's all the defendant has to admit in order to plead guilty. And the reason all this matters is the Sixth Amendment. The Sixth Amendment requires that the jury, not a later sentencing court, has to find facts unanimously and beyond a reasonable doubt. The only facts we know are elements. No, we actually don't need to even go there. I do rely on a lien, but here this is, it's simpler even. It's the only facts that are necessary to a conviction are the elements. And Pennsylvania's A3 robbery, the elements are a threat to commit any indeterminate felony one or felony two. It's just like any indeterminate weapon example. The Pennsylvania case law does not require a defendant to admit to a particular felony one or felony two. The jury isn't required to find a particular felony one or felony two. Felony one, felony two in Pennsylvania law is defined broadly enough to encompass crimes that do not require force. Let's back up. Did your client plead guilty to a felony offense in that, and you're dealing with the 1991? 1990 robbery. 1990 robbery. I have 91 in my head. Sentencing in 91. They're 91 convictions, but it's a 1990 robbery. 1990 robbery. And, and you've acknowledged that there are gradations of, within the robbery statute, and so the statute overall is divisible, so you could, we can figure out which piece your can attempt to using the Taylor-Shepard documents. And, and what do we know from the Taylor-Shepard documents? Only that he pled guilty to felony one robbery, which includes A1, A2, and A3. Then we go to this court, and the Supreme Court. Describe, would you describe what it is? Oh, I'm sorry. What's felony? It's a, it's a. The statute itself is laid out in the brief at, my opening brief, 29 to 30, if that helps you. And the language is, a person's guilty of robbery in the course of committing a theft, he commits or threatens to commit any felony of the first or second degree. In Pennsylvania, any felony of the first or second degree includes felonies that do not have force as an element and do not otherwise threaten harm. And as an example, I offered, if in the course of committing a theft, you commit forgery of the securities that you're thieving, that's a felony too, and that counts under the statute. If in the course of robbing a under Pennsylvania law 18 PACS 3310, that's an F2, that is encompassed within Pennsylvania's robbery A1 subsection 3 statute. So we have a broad statute. I just have to stop you because I had thought that in your opening brief, you'd actually conceded that these were violent felonies. I never conceded. I said they're not violent felonies, and if they are, they count as one. After decamps, it appears that we have a different argument. You said the 1990 robberies are not violent felonies committed on occasions different from one another, but at most count as one violent felony predicate. So you're saying when you said at most, that was that was your out. You weren't acknowledging that they were violent felonies. It's decamps that creates this new argument, and I've acknowledged in the supplemental briefing that this is a different argument that comes to light after decamps. The Supreme Court tells us in a 2013 opinion Henderson bill that if an error comes to light while the case is pending on appeal, that's plain error, and that the court can notice it. So your assertion is that what was evident from Shepard and Taylor documents before decamp came out is no longer evident, or is nothing that the court can figure out properly? Yeah, decamps really educated us on how we are to look at Taylor-Shepard documents. Before decamps, this court had in the terroristic threats context, which really is analyzed exactly the same as this robbery conviction I'm talking about, we had this court's opinion in Mahone. In Mahone, the court was looking at the indictment to determine what the underlying crime was. So that's the law that we were stuck with in the district court. We now know that to have been wrong. Well, do you know, and I think I heard you acknowledge, that a felony, a robbery is a felony in the first degree if in the course of committing it, the perpetrator inflicts serious bodily injury, threatens another with potentially putting him in fear of bodily injury, or commits threats, or commits or threatens immediately to commit a felony of the first or second degree, right? That's what your client pled guilty to, that thing, which could have one of those three things, right? A1 through 3, right. And then you go to the third one, am I following you right, and you say the third one consists of a couple of things, what is a felony of the first or second degree, is that right? Exactly. And that's where your decamp argument kicks in and you say, well, we don't know what it is, decamp tells us we can't look. Right, decamps completely answers that question. It provides us with the hypothetical indeterminate weapon example. This is the indeterminate F1, F2 example that's overbroad and can encompass crimes that are not violent felonies. And decamps actually applies it in the context of a robbery, and there you even have an admission on the record from the defendant that he actually committed the unlawful entry element. I'm confused because of what you're saying is that third piece of a first degree felony, which then has two sub pieces, is such that you can't look at Shepard documents. Isn't the fact that there are two subsections, doesn't that make that divisible? You mean for the A3? There really aren't two subsections. The critical point to get is that it is a broad statute. If the statute, the A1-3, let me go back to the language, if it said in the course of committing a theft he threatened to commit any felony 1 or felony 2 involving the use of force against a person of another, or any felony 1 or felony 2 involving the use of force against property, then there could be an argument that the statute's divisible. Here we have an indivisible broad statute, just like the burglary statute at issue in DeKalb's. Entry of a place to commit a crime. The entry was broad. It encompassed unlawful entry and entry, and DeKalb said you can't go to the Taylor Shepard documents to determine whether it was unlawful entry because it's a broad statute. A defendant who pleads guilty never has to admit unlawful entry as an element because it's not an element. Here too, the particular F1 or F2 threatened is never an element of the offense. The defendant never has to admit committing a particular F1 or F2. I thought he had admitted, I thought the record reflected that these were F1s. They don't? Yes, it reflects F1, and F1 includes the 3701 A1 sub 3. And then we, and I know it's step by step, but this court has held. I'm following you down the rabbit hole. This court has repeatedly held that when you're at a statute just like this one, and all you have an indictment, is an indictment, and that's all we have here, this court has to consider that the defendant, his conviction rested on the least culpable conduct necessary to support the conviction. And you're saying there aren't other convictions that qualify? We have these three. So if, if, but there are three, there are others, there are three others. There's terroristic threat, escape, Pennsylvania escape, and Florida. Right. The terroristic threats argument is essentially the same as the burglary argument. The escape arguments are all about the records. In those cases, again, what the government has put forward is a plea to an indictment that charges a broad statute, which encompasses both, both the, the arguments are essentially the same, so I'll combine them. Both the escape, Pennsylvania and the Florida escape statute, encompass walking away from a non-secured facility. And in the case of the Pennsylvania statute, that statute also encompasses a failure to report type of escape, which Chambers ruled is not a violent felony, categorically. In the context of walking away from unsecured facility without using force or violence, we have Hopkins from the circuit, which essentially holds that. And then we have other circuits that have reached following chambers and held that walking away from a non-secured facility is not a violent felony. And it all gets down to the... So all of this leads us to none of these are violent felonies and we never get to a lead. Exactly. None of these are violent felonies. We never get to a lead. By force, however slight, committed on different occasions, we never get to... The force, however slight, that's briefed, I think, pretty exhaustively in the briefs. I, of course, can go into it. All right. We'll hear from you on rebuttal. May it please the court. Laura Irwin from the U.S. Attorney's Office on behalf of the government. I was intending to start with the issue of committed on occasions different from one another, but if the court would like, I'd be happy to jump right into de Camp's. Yes. I would like. And you can hit the other issue later if you have time. I'm going to sound a little bumbling on this point, but what I just heard was not what I saw in the brief, the supplemental briefing that was filed. So I'm not going to be that articulate in responding. What I will say is, if the court is interested, I'd be happy to brief it along the lines of what's just been argued. But I would very vigorously argue that de Camp's did nothing of the sort. If you look at de Camp's, it simply says, if a statute is indivisible, you don't go to Sheppard-Taylor documents. And in fact, if you look at the first page... Okay. Well, meet her argument. Her argument is the crucial piece of the statute is indivisible. Right? She's saying he pleads to felony one. Felony one breaks down into three subsections. The last subsection of which is the least culpable kind of conduct. And once you're down there in that least culpable kind of conduct, you can't divide it anymore. If I got that right. Right. Exactly. So what's the response to that? The response is that then there would never be an indivisible statute. Because you look at each subsection as its own statute. If I'm following it correctly. If she's saying you look at each, you know, little I, double little I, triple I, V, V1, each of those is a statute which then becomes indivisible, which then prevents you from looking at Taylor-Sheppard documents. That's one problem I see that I don't find any authority for that in de Camp's. The other is, is it's driven by the grading by the state. And what we do know, what's clear from everything we've read, is that this is an elements driven, an offense elements driven analysis. We cited the Petit case in our supplemental briefing proposition that you don't look at a state's grading because it's an element, because the state, you know, this is a question of federal law and to allow it to be driven by those things to which a defendant does not plead are going to further confabulate and confound the analysis to a level that will be more and more difficult. And our position is, if anything, is de Camp's makes it easier now because we know, although this circuit wasn't doing it, we know the limits of the divisibility, indivisibility analysis. And when you're indivisible, you don't go any further. And de Camp's also takes us back and reminds us, keeping in mind this was an enumerated offense, that when you do look at Taylor-Sheppard documents, you look at the elements only. You don't look at any superfluous facts. So I fear I'm not answering your question. So how do we have violent felonies here then? Then get to what we do have. How do you convince us that we do have violent felonies that count here? Well, in this case, we have some that are the divisible ones. That would be terroristic threats and burglary. Obviously, the ones that we can lead off with are the robberies, which are indivisible. We look at his, we look at the statute. We know that they qualify. And as Judge Jordan pointed out, that issue was not before this court as to whether or not they, in fact, qualify. The issue that was presented was, do they qualify as offenses committed on occasions different than another? So that issue is gone. The only robbery that was preserved on appeal was the one that applies from Hollins of any force, however slight. And we would argue, obviously, as we did in our brief, that those qualify. So now we have four. All right. So you're saying before the district court, the argument that was just made was never made. Right. I mean, I appreciate that the Supreme Court can come along and say things, but that might change things. But A, that was not made clear in the brief that that's their position they were taking. And B, I'm not sure it's even applicable here, even if it does change anything for the reasons we've already discussed. So we have four, four of the robberies. We can go on to the escapes and talk about those. We can talk about the terroristic threats. But again, if the analysis has to be broken down to every statute in its subparts to the whole, I think that Decamps would have, if that's what it says, there would have been an outcry of this is more complicated than less complicated. And the Supreme Court started off on page 2283 saying, really, our prior cases decide this case. This is, there's nothing new here. If that were the case, then you'd never have an instance of a violent felony. Right. Because you'd always bring it. Well, certainly in robbery, you'd always bring it down to I3 and you'd just say, no, it won't apply. I think that's correct. And it's also correct if you look at their, the issue I thought the court wanted to hear about was committed on occasions different than one another. And I think that if you look at what that means, first of all, that's completely separate from whether something qualifies as a predicate. The predicate analysis is, is there an enough quotient of violence for Congress to have said, you know, Congress is all about the violence. The committed on occasions different than another is the funnel through which you have to put those cases to see if they are predicates. I would turn the court's attention to Judge Rendell's opinion in Najuwan, I'm not sure how to say that. Yeah, Najuwan. And the Morris case involving a loss. Right. Same kind of parallel phrasing. Exactly. And that's where that takes you. And you go and you look at those to determine whether or not they can actually even then qualify as I'd be happy to discuss the committed on offenses different than one another if you'd like more detail on that. I mean, we believe it's a question of law. I can add on that. I can talk about any of the other prior predicates if you have any questions. Well, if we haven't mentioned residual clause, which was a big part of the argument, I thought, and, you know, urging by the appellant that you waive that argument. Maybe she's waived the argument that you waived it by not making it. That would only apply to the burglary offense. I really think there's enough predicates where the court doesn't need to get to the burglary offense. We believe that it does qualify, as we stated in our brief, as an enumerated offense that you can look at the criminal complaint and our backdrop argument would be the residual clause. I don't believe it's been waived because all the One thing about the record. You seemed to say in your briefing that the 1991 convictions were for physically taking or moving property from a person by force, however slight, but they were actually first degree felonies, weren't they? I made a mistake on that, and in all honesty, there's only one robbery was by force, however slight. The other three were of a different subsection. There's the 87 robbery, that's the force by however slight, and then the 90 robberies, the 91 convictions, those three are all felony one robbery convictions, right? Well, I think they're subsection three, whereas the by force, however slight, because I hesitate to I thought they were first degree robberies, but they were not by force, however slight. Exactly. They were a completely different situation. Right, okay. And we believe that they qualify as under a straight analysis. Okay, good enough, thanks. Any further questions? Thank you so much. So a lien is out. A lien is out. A lien is a mandatory minimum analysis. I believe there's been an unpublished decision from the circuit, Riviera, that says it doesn't apply in the ACCA context. Okay. Is it out completely? I think so. No, I mean for our consideration. I believe, with regard to this particular case before the court, I believe it is. Thank you. Thank you. Thank you. First, with respect to the raising the new issue and the supplemental brief, it was clearly raised in the supplemental brief that the three F1 robberies from 1990 don't qualify under DeKalb's and DeKalb said Let's take it as given that that's true. Why don't you meet the argument that if one follows your logic, then there will never be a violent felony robbery in the state of Pennsylvania, because you'll always descend to the lowest subsection where a defendant can take refuge and say, and now it's indivisible. You can't look to see that I actually pled guilty to aggravated assault. Actually, no, that's not the case because the government, of course, has the burden of proving that it's an ACCA qualifier. And if the government wants to, if all we have is an indictment and all we have is a judgment, that could be true. It might not be true after, you know, amendments to the statute. It would have to be true because by definition, anytime you look, anytime you're looking at any document, any Shepard or Taylor document, you're looking past the statute itself. So how could you ever look at any document? The 3701 statute is divisible into A1 through 5, so you can look at Taylor Shepard documents. If the guilty plea colloquy hadn't been introduced and during the guilty plea colloquy the defendant admitted the A1 version or the A2 version, then it's a violent felony. Here, the government has the burden. They fail to come forward with that additional evidence. The government always has the power in the district, or I'm sorry, it would have been in the state court to have charged just A1 or on the judgment to have the judgment reflect a guilty plea to just A1. They didn't do that in this case. It's the failure of proof here that makes this not a violent felony. But when we talk about, you know, suspending disbelief, I guess I have to point to the DeKalb's decision itself. Who would have thought, I think even six months ago, that the Supreme Court of the United States would hold that California burglary is categorically never a violent felony? That was the holding. The biggest state or the most populous state in the country. And a burglary in California can never count as a predicate, even when the defendant admitted committing act of burglary. Here we don't have those admissions on the record because the government didn't come forward with the guilty plea colloquy. It was a non-divisible statute, right? Whether that crime was a violent felony, it was always look at the elements of A1-5 and determine is it categorically a crime of violence? It's exactly the same thing applying it to A1-3. All right. Thank you. We may need something further on this or we may not. We will let you know if we do. Thank you, Your Honor. Thank you very much.